## MOWER v. McCARTHY et al.

No. 7478.   Decided June 5, 1952.   (245 P. 2d 224.)

See 27 C. J. S., Discovery, sec. 80. Discovery, documents subject to. 17 Am. Jur., Discovery and Inspection, secs. 26 et seq.; 8 A. L. R. 2d 224.

*Van Cott, Bagley, Cornwall & McCarthy, Clifford L. Ashton,* Salt Lake City, for appellant.

*Rawlings, Wallace, Black, Roberts & Black, Dwight L. King, King & Anderson, Emmett L. Brown,* Salt Lake City, for respondent.

WADE, Justice.

The defendant, The Denver and Rio Grande Western Railroad Company, appeals from an interlocutory order directing it to produce and permit plaintiff to inspect and copy a transcript of the testimony of witnesses taken by it while investigating a derailment accident by which plaintiff's decedent was killed. Because of the importance of the question and once the inspection and copying was made a reversal on appeal would not restore the parties to their present status, we granted the appeal. It involves a construction of the discovery provisions of the Utah Rules of Civil Procedure, especially Rules 26, 30 and 34. Hereafter, the term "Rule" or "Rules" unless expressly otherwise stated refer to the Utah Rules of Civil Procedure.

The accident occurred on February 26, 1944, about three miles west of Soldiers Summit, Utah, while decedent was operating the derailed locomotive as engineer. On March 4, 1944, the investigation was held by the operations department of defendant in the due course of its business without participation therein by either its claims or legal department. It was in the form of oral questions and answers which were stenographically recorded and transcribed. The testimony falls into three classifications: (1)

The testimony of the four surviving train crew members; (2) The testimony of other of defendant's employees who examined or inspected the equipment or facilities of defendant involved in the accident shortly before or after it occurred; and (3) The opinions and conclusions of supervisory employees of defendant in the nature of expert testimony.

About March 11, 1944, plaintiff employed the law firm of Rawlins, Wallace, Black and Roberts to handle this claim. Soon thereafter Mr. Black notified the defendant of such employment and both he and an investigator interviewed the four surviving crew members. The record shows nothing on what was disclosed by these interviews except that later that firm commenced this action on December 24, 1946; that firm withdrew on April 22, 1948, after plaintiff contrary to their advice refused to accept a small offer of settlement from the defendant, thereby indicating they considered the evidence they had obtained not sufficient to justify a trial. Later plaintiff, appearing through attorneys Brown and King associated with the above mentioned firm, amended her complaint after Mr. King had interviewed the three still surviving train crew members. King testified that two of them were hostile and uncooperative but the third was friendly and cooperative but all their memories were very hazy and they lacked information on vital details bearing on the cause of the accident so that he could not discover sufficient proof of its cause, mentioning many acts and details which he could not prove one way or the other.

The dissenting opinion suggests that under Art. VIII, Sec. 9, Constitution of Utah, providing that "in cases of law the appeal shall be on questions of law alone," we are powerless to review this appeal without findings of fact. Neither side requested such findings and neither raised the question here. There are cases which hold that such findings are required under Sec. 104-26-3, U. C. A. 1943, which provides that "the facts found

and the conclusions of law must be separately stated," but they do not rely on the above constitutional provision. Although the constitution provides for a review of the facts in equity cases, findings of fact are required in equity as well as law cases and many of the cases referred to involve equitable issues. *In re Thompson's Estate,* 72 Utah 17, 35, 269 P. 103; *In re Raleigh's Estate,* 48 Utah 128, 141, 158 P. 705. In reviewing a case of this kind where issues of fact are involved and there are no findings of fact, we do not review the facts but assume that the trier of the facts found them in accord with its decision, and we affirm the decision if from the evidence it would be reasonable to find facts to support it. See Utah Rules of Civil Procedure, Rule 49(a). This is the same procedure which is followed where a jury returns a general verdict without disclosing its findings on the facts, and in administrative agency cases where findings of fact are not required, but we cannot review the facts. Even under the above statute, findings of fact are not required for a review of a decision on a motion involving issues of fact which does not constitute a final judgment. *In re Gibbs,* 4 Utah 97, 6 P. 525; *Wright* v. *Union P. R. Co.,* 22 Utah 338, 62 P. 317. So it is clear that the above constitutional provision does not prohibit this review.

Rule 52(a) which superseded Sec. 104-26-3, expressly provides that in this kind of a motion findings of fact are unnecessary. In every case involving disputed issues of fact, findings of such facts are helpful to the reviewing court and should be made where requested and findings which meet the approval of the trier of the facts are proposed. Findings on such issues are common although not required in jury cases, by special verdicts and answers to interrogatories, and in cases tried before administrative agencies. Rule 49(a) and (b).

So in reviewing this decision we assume that the trial court found the facts in accord with its decision in all cases where under the evidence it could reasonably so find. All of

the facts herein stated could reasonably have been found from the evidence. There is very little conflict in the evidence. The dispute involves questions of law, and inferences which should be drawn from undisputed evidentiary facts, such as whether this transcript was prepared in anticipation of litigation and whether a denial of such production will cause plaintiff unfair prejudice, undue hardship or injustice in preparing her case. Plaintiff claims that if inspection is denied she has no source of learning the information which it contains and that without that information she cannot prove what caused the accident. Defendant does not claim that such information is otherwise available to plaintiff, or that this transcript does not disclose the cause of the accident, or that plaintiff has failed to use diligence in the discovery of such evidence, but seems to argue that plaintiff's case is so weak that she should be satisfied to drop it without inspecting this transcript and that she is acting in bad faith in pressing for such discovery. If plaintiff's case is as weak as defendants seem to claim, then no harm could be done in making this disclosure. When Mr. Black interviewed the surviving train crew members and advised plaintiff to settle, our law made no provision for such a discovery which was first provided for by Utah Rules of Civil Procedure, not effective until the first of the year 1950.

The Rules should "be liberally construed to secure the just, speedy, and inexpensive determination of every action," Rule 1(a). One of the principal means of obtaining these ends is discovery. See Alexander Holzoff's Instruments of Discovery under Federal Rules of Procedure, 41 Michigan Law Review 205, where he says:

"* * * a disclosure may be obtained in respect to all pertinent information in the possession of any party to a litigation. An exception is, of course, made for privileged matter. It is one of the basic theories of the new procedure that every party to a law suit is under a duty to reveal to any other party all pertinent data in his control. * * *"

### Rule 26 provides:

(a) "Any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes."

(b) "Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

### Rule 30 provides:

(b) After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court, in which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated time or place other than that stated in the notice, or that it may be taken only on written interrogatories, or that certain matters shall not be inquired into, or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that after being sealed the deposition shall be opened only by order of the court, or that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or the court may make any other order which justice requires to protect the party or witness from annoyance, expense, embarrassment, or oppression. *The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects an attorney's mental impressions, conclusions,*

*opinions, or legal theories, or, except as provided in Rule 35, the con-
clusions of an expert."* (Emphasis added.)

The italicized portions of Rule 30 are not a part of the
Federal Rules of Civil Procedure, 28 U. S. C. A. but were
drafted by the Federal Rules Advisory Committee and
contained in the recommended amendments in such Com-
mittee's report published in June, 1946.[1] Much litigation,
uncertainty and conflict in views and decisions in the fed-
eral practice had developed on this subject under the New
Rules. This was climaxed by *Hickman* v. *Taylor,* 4 F. R. D.
479, where in the Federal District Court for the eastern
district of Pennsylvania on July 30, 1945 found Mr. Forten-
baugh, attorney for the defendant, in contempt for refusal
to produce all written statements of witnesses obtained by
him while acting as attorney for defendant in preparation
for anticipated litigation, to state in substance any fact
concerning the case which he learned through oral state-
ments of witnesses to him, and produce his memoranda
of statements of facts by witnesses for inspection by the
court to determine what portion thereof should be revealed
to plaintiff. That was an action by the administrator of the
estate of one of the crew members who was drowned in the
sinking of a tug boat while it was engaged in towing a car
float across the Delaware River at Philadelphia. Forten-
baugh was employed as attorney for the tug boat owners
and their underwriters three days after the sinking to
prepare their defense against anticipated claims by the
representatives of the deceased crew members and others.

On March 4, 1943, less than a month after the sinking,
a public hearing was held before the United States Steam-
boat Inspectors at which the surviving crew members were
examined. This testimony was transcribed and made avail-
able to all interested parties. Shortly thereafter, Forten-
baugh interviewed the surviving crew members and took
written statements from them. He also interviewed other

[1]See pages 44-47, 5 F. R. D. 339, 353-357.

witnesses, some times making memoranda of what they told him. This is the material which he refused to furnish his opponent.

On December 10, 1945, the Circuit Court of Appeals reversed that decision.[2] It held that the information requested is the "work product of the lawyer" and while not strictly privileged communications as that term is used in the exclusion of evidence it was covered by the term "privileged" as that term was used in the Federal Rules governing discovery. About the time of the Advisory Committee's Report, supra, a Discovery Procedure Symposium was held before the 1946 Conference of the Judges of the Third United States Circuit Court of Appeals, wherein this case and its problems were discussed. George Whatron Pepper, Vice Chairman of the Advisory Committee, stated what the committee intended by this proposed amendment. Mr. Fortenbaugh and Mr. Freedman, who represented defendant and plaintiff in the *Hickman* case, and a number of other interested lawyers, stated their views on the subject. On January 13, 1947, this case was decided by the Supreme Court of the United States[3] confirming the result reached by the Circuit Court, but holding that this is not privileged matter but was information obtained by and constituted "the work product of the lawyer," and in the absence of a showing that such facts would remain hidden in the attorney's file, and that the production of such facts was essential to the preparation of his case, this kind of information was not intended to be discoverable by the Rules.

In revising the federal rules in 1947, this proposed amendment was not adopted. For something more definite on this question, the Utah Rules Committee recommended and the Supreme Court adopted this provision.

[2]See, 3 Cir., 153 F. 2d 212, 223.
[3]See 329 U. S. 495, 67 S. Ct. 385, 91 L. Ed. 451.

Rule 34 provides:

"Upon motion of any party showing good cause therefor and upon notice to all other parties not in default, and subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control; * * *."

Ordinarily the Rules allow discovery as a matter of course without any showing or an order of court,[4] but on showing of good cause the court may stop, limit and control such discovery in the interests of fairness, convenience and justice.[5] Rule 34 dealing with discovery of documents and other tangible things reverses this proceedure requiring a showing of good cause and an order of court before discovery is allowed in such matters and the last two sentences of Rule 30(b)[6], dealing with writings makes some writings discoverable only on specified conditions and as to other writings discovery is prohibited .

Plaintiff's claim for discovery comes squarely under Rule 34. The information which she seeks is contained in this transcript which is a tangible writing. If she is entitled to discovery of this information, this is the most direct, convenient, effective and inexpensive method provided and there is no apparent reason why she should be required to try to discover this information by the indirect method of first discovering the names and addresses of these witnesses

[4]See Rules 26, 31, 33 and 36.

[5]See Rule 30(b) and (d). The first sentence of (b) and all of (d) are the same as the Federal Rule.

[6]These sentences are not in the similar Federal Rule but were drafted and proposed to the Supreme Court by the Federal Rules Advisory Committee but not adopted by the court. Rule 35 dealing with expert medical evidence also requires a showing of good cause and a court order.

and then taking their depositions. Had such indirect procedure been followed soon after this accident, it might have produced the desired result at much greater inconvenience and expense to her but at this late date with the intervening death toll and hazy memories this would obviously be futile.

For good cause shown, Rule 34 provides for the discovery of any document or other tangible thing within the scope permitted by Rule 26(b), which permits discovery of all non-privileged relevant matter, even though inadmissible at the trial, which is reasonably calculated to lead to the discovery of admissible evidence. The only express limitation on the scope of discovery permitted by that rule is that it be relevant and not privileged. No claim is made that this transcript is not within that scope.

However, such discovery is also subject to the provisions of Rule 30(b) which further limits and regulates discovery within the scope of Rule 26(b). The first sentence of that provision is all that the Federal Rules contain, it is regulatory and does not affect our problem. The last two sentences contain the new matter and deal only with writings. They forbid discovery (1) of any writing prepared or obtained for the adverse party in anticipation of litigation or preparation for trial unless a denial would cause unfair prejudice, undue hardship or injustice, and (2) of "any part of the writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, or, except as provided in Rule 35, the conclusions of an expert."[7] The only question of the sufficiency of plaintiff's showing of good cause involves the construction of these provisions. We will consider the last provision first.

This provision deals only with subjective matters, not with evidence of what the objective facts, that is occurrences, conditions and circumstances, are, but with con-

[7] See Note 6, supra.

clusions from or of other evidence of such facts or facts which have personal coloring.[8] It forbids dis- covery of any part of a writing which reflects an attorney's mental impressions, conclusions, opinions or legal theories, sometimes called the work product of an attorney, and the conclusions of an expert. It prohibits discovery absolutely of all such matters and to that effect is clear, positive and without exception. So the trial court erred in holding that this prohibition does not apply to expert opinion where a denial would cause prejudice, hardship or injustice. The exception on that account is contained in another sentence and clearly refers only to writings described in the other sentence which does not deal with the work product of the attorney or the conclusions of an expert.[9] Though the *Hickman* case indicates that the hardship rule might prevent the exclusion from discovery even of the work product of the attorney, it was not construing the provisions of our rules but the intention of the rules generally on that subject. These prohibitions in our rules which are not in the Federal rules apply only to writings but oral discovery of the work product of an attorney under the *Hickman* case is prohibited as contrary to the general purposes and intentions of the Rules. Whether oral discovery of such matter is permitted with or without a showing of hardship is not before us and we express no opinion thereon. Unlike the provisions of the previous sentence category (1) above, the prohibition of this provision is not limited to writings prepared or obtained by or for the adverse party in anticipation of litigation or preparation for trial, though the use of the words "the writing" not "a" or "any writing" in the phrase "any part of the writing" might be so construed. If such were the intention of the words "such writing" would have more clearly and accurately expressed that meaning. If the intention was to

---

[8] See Discovery Procedure Symposium particularly statements by Fortenbaugh and Freedman.

[9] See George Wharton Pepper's statement in Discovery Procedure Symposium 5 F. R. D. 403, 406 and 407.

refer to the writing of which discovery is sought the reference being to a definite writing the use of the words "the writing" was correct and proper and that is the construction we give it. Such construction is in harmony with the purpose of the provision to protect the work product of the lawyer and the conclusions of an expert.

Thus any part of this transcript which reflects the conclusions of an expert based on assumed facts, but not containing evidence of events, conditions, circumstances and similar matters, is not discoverable. What part of the transcript comes within this prohibition must be determined without permitting the plaintiff's counsel to see the questioned matter. So the defendant should submit to the court the parts of the transcript which it claims is not discoverable and the court should decide which parts are not discoverable.

The testimony of the surviving train crew, and of other employees who inspected the equipment and facilities involved in the accident shortly before or after is evidence of objective facts dealing with events, conditions and circumstances, no expert conclusions, nor lawyers' impressions, conclusions, opinions or theories are involved. In such case discovery can only be denied under the first sentence, category (1) above, because it was prepared for defendant in anticipation of litigation or preparation for trial, and not even then if a denial will cause prejudice, hardship, or injustice. We conclude that a denial would cause prejudice, hardship and injustice so we do not have to determine whether this transcript was prepared in anticipation of litigation or preparation for trial, and we express no opinion on that question. The *Hickman* case is of little aid to us on this question for there the work product of a lawyer was involved and ample evidence of all the facts and circumstances was available to plaintiff through other sources.

Prejudice, hardship or injustice is sufficiently shown under the circumstances of this case, where the party seeking discovery is, with due diligence, unable to obtain evidence of some of the material facts, events, conditions and circumstances of the case which the discovery will probably reveal, and that on account of such showing such party is unable to adequately prepare the case for trial.

It is clear that from the beginning plaintiff's attorneys have made diligent search and investigations for evidence of the facts, interviewing all the witnesses they had reason to believe could supply such evidence. Until the new Rules were adopted they could not demand from defendant the names of its witnesses. The action of her attorneys in advising a settlement at the small offer they were able to obtain and withdrawing when plaintiff refused, clearly indicates that they had failed to find evidence to establish her case. The only evidence that was available to them then was from the interviews with the surviving train crew. The defendant in its investigation found it necessary to take the testimony of employees who inspected the equipment and facilities involved in the accident in order to satisfactorily disclose the cause of the accident. Certainly there would be some reluctance on the part of loyal employees to tell all they knew to plaintiff's investigators, and unless such investigators knew enough to ask the right questions, they would not be inclined to volunteer evidence which would be damaging to defendant's case. With their memories dimmed with time, and the toll which death had taken, and their lack of knowledge of many vital factors, it would now be futile to try to get to the bottom of the case without refreshing the memory of the witnesses from this transcript. Plaintiff's case on the evidence which she has is obviously weak, this is asserted by defendant, yet it does not offer to disclose its hand and show

just how weak it really is.[10] While the weakness in plaintiff's showing is that her case is weak and not necessarily that she has been unable to obtain evidence of the cause of the accident, still, in view of the fact that the witnesses who know the facts are employed by defendant, and until recently many of them have been unknown to plaintiff, and the facilities and equipment involved in the accident have at all times been under the control of defendant and not available to plaintiff for inspection, we think it is sufficient. It is clear that the discovery sought would disclose the cause of the accident. There is no claim to the contrary. The objects and purposes of the discovery Rules are to develop the truth and prevent surprise. Clearly plaintiff will be greatly aided in these respects by such discovery for she can never be adequately prepared for trial without knowing what this transcript contains.

Defendant's final contention is that discovery of this transcript is prohibited by Sections 38, 40 and 41 of Title 45 of the United States Code, 45 U. S. C. A. ■ §§ 38, 40, 41, which contain the following provisions:

§ 38. "It shall be the duty of the general manager, superintendent, or other proper officer of every common carrier engaged in interstate or foreign commerce by railroad to make to the Interstate Commerce Commission, at its office in Washington, District of Columbia, *a monthly report, under oath, of all collisions, derailments, or other accidents resulting in injury to persons, equipment, or roadbed arising from the operation of such railroad * * * which report shall state the nature and causes thereof and the circumstances connected therewith: * * *.*"

§ 40. *"The Interstate Commerce Commission shall have authority to investigate all collisions, derailments, or other accidents* resulting

[10]See talk by Howart Burtt in the Discovery Procedure Symposium, 5 F. R. D. 403, where he said:

"If you have some evidence which you know is fatal to the other side, you call on the other attorney and you say, 'Drop over at my office. Here is something which will interest you, and which shows you haven't got any case,' and if he is the right kind of lawyer he will withdraw the case. I have done that many a time myself."

in serious injury to person or to the property of a railroad occurring on the line of any common carrier engaged in interstate or foreign commerce by railroad. *The commission or any impartial investigator thereunto authorized by said commission, shall have authority to investigate such collisions, derailments, or other accidents aforesaid, and all the attending facts, conditions, and circumstances, and for that purpose may subpoena witnesses, administer oaths, take testimony, and require the production of books, papers, orders, memoranda, exhibits, and other evidence,* and shall be provided by said carriers with all reasonable facilities: * * *. Said commission shall, when it deems it to the public interest, make reports of such investigations, stating the cause of accident, together with such recommendations as it deems proper. Such reports shall be made public in such manner as the commission deems proper. May 6, 1910, c. 208, § 3, 36 Stat. 351."

§ 41. *"Neither the report required by section 38 of this title nor any report of the investigation provided for in section 40 of this title nor any part thereof shall be admitted as evidence or used for any purpose in any suit or action for damages* growing out of any matter mentioned in said report or investigation. May 6, 1910, c. 208, § 4, 36 Stat. 351." (Emphasis added.)

Section 41 prohibits the admission as evidence or use for any purpose the "report required by section 38" or "any report of the investigation provided for in section 40" or "any part thereof." This prohibits the use as evidence of only two reports: (1) The report required by section 38, which is a monthly report of all collisions, derailments or other accidents by every interstate common carrier by railroad to the Interstate Commerce Commission. This investigation by the defendant did not constitute such a report and there is no direct evidence that such a report was ever made. The only evidence of that is that it is by law required and the testimony that one of the purposes for the investigation was to enable defendant to make such report. (2) The report in the files of the Interstate Commerce Commission of an invesigation made by it or its investigator of a railroad collision, derailment or other accident. There is no evidence whatever that any such investigation of this accident was ever made. This investigation was one made by the defendant. It was neither a

monthly report by it to the Interstate Commerce Commission, nor a report of an investigation by such commission or its investigator. None of the sections referred to even mentions any investigation made by the railroad company of an accident. So clearly this transcript does not come within the terms of those statutes.

Defendant in its brief seems to overlook the fact that the reports prohibited as evidence in Section 41 supra, is not the kind of report of an investigation with which we are here concerned. For it cites and quotes from cases and the Congressional Record which discusses the investigation mentioned in Section 40, but fails to point out that such is not an investigation made by a railroad common carrier. These cases and debates in Congress would be in point if they were talking about an investigation made by the railroad company but they are not talking about such an investigation but about one made by or on behalf of the Interstate Commerce Commission which is a different investigation entirely, and therefore has no bearing on our problem.

Later, the defendant in its brief admits that the court might take the position we have taken on that question but argues that we should treat the prohibition as covering an investigatiton made by the railroad because the purpose of the prohibition was to induce the railroads to report all the facts even though they would be damaging to it in case of a suit for damages. If the language of the statute were uncertain or ambiguous as to what investigation or report was referred to then in construing this statute we could consider the purpose with other evidence showing the intent of the legislature. But here the statute is clear and unambiguous, and there is nothing in the evidence that tends to show that it did not mean just what it said. To enlarge the coverage of the statute probably would have unforseeable consequences which were not intended by the legislature. This discovery is not prohibited by the federal statutes referred to.

The case is remanded to the trial court for further proceedings in accordance with the views herein expressed. Respondents shall recover their costs of this appeal.

McDONOUGH and CROCKETT, JJ., concur.

WOLFE, Chief Justice (dissenting).

I dissent to the majority holding that a denial of discovery of the transcript of testimony would cause prejudice, undue hardship or injustice. I do not think the record is in shape to so hold.

*No findings of fact were prepared by counsel nor signed or filed by the trial court.* After listening to oral argument, the trial court stated into the record his reasons for granting the motion for discovery as follows:

"The decision of the court on this matter is that the transcript of the testimony referred to in the affidafits, and the testimony of the witnesses on this hearing, is not a writing obtained or prepared by the defendant company, or any one or more of its agents, in anticipation of litigation. And the reason why I so determine is that the purposes of the defendant company in holding the hearing were varied; they included among other things a determination of the facts of the happening, the fixing of the responsibility, if any, on any person for the occurrence of the incident, for the purpose of correcting any physical defect that might exist in the operation of the railroad, if any existed, for the purpose of providing the Interstate Commerce Commission with information concerning the incident if any such request was made, and for the further purpose of making a record of the facts and the circumstances of the incident in the event that the defendant company needed to use the information thereby obtained for any purpose, including the defense of any lawsuit."

Plaintiff's motion to produce the documents is made pursuant to Rule 34 and subject to the limitation of Rule 30(b), Utah Rules of Civil Procedure. The pertinent limitation of Rule 30(b) states:

"The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in prepa-

ration for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice."

Having granted the motion because anticipation of litigation was not the primary purpose in preparing the transcript of testimony, it became unnecessary for the trial court to consider the question whether the denial of production would cause undue hardship or injustice.

This court in the course of a prolonged consideration of this case has pondered whether the transcript was prepared in anticipation of litigation but the evolution of argument now brings us to the exception thereto, the question of undue hardship or injustice. The issues of what constitutes undue hardship or injustice require a decision and findings upon questions of fact. This court is the tribunal which will ultimately make authoritative interpretation of its own rules. But our interpretation must arise out of factual situations developed in lower tribunals. And those fact situations must be fixed by findings. This court cannot roam over the record resolving contradiction of testimony to determine wherein lies the truth and then after we have found the facts interpret the rules on those facts found by us. In this case the affidavits and testimony concerning these issues are contradictory, but we have not the witnesses before us. Sufficient facts are contained in the record to support a factual conclusion in favor of either plaintiff or defendant. However, it is not the function of this, an appellate and reviewing court, to make findings of fact. Article VIII, Section 4, of the Constitution of Utah states:

"The Supreme Court shall have original jurisdiction to issue writs of mandamus, certiorari, prohibition, quo warranto and habeas corpus. * * * In other cases the Supreme Court shall have appellate jurisdiction only, and power to issue writs necessary and proper for the exercise of that jurisdiction."

Article VIII, Section 9, states:

"From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court. The appeal shall be upon the record made in the court below and under such regulations as may be provided by law. In equity cases the appeal may be on questions of both law and facts; in cases at law the appeal shall be on questions of law alone."

The new Rules of Civil Procedure have not dispensed with the necessity of findings of fact being drawn as the basis of the decision from which an interlocutory appeal is allowed. In law cases, the constitution limits the scope of appeals in this court to a determination of whether the findings of fact are supported by the evidence and whether the law has been correctly interpreted or applied by the trial court. In the words of the constitution,

"* * * in cases at law the appeal shall be on questions of law alone"; "* * * the Supreme Court shall have appellate jurisdiction only * * *".

The majority of the Court takes the position that

"where issues of fact are involved and there are no findings of fact, we do not review the facts but assume that the trier of the facts found them *in accord with its decision,* and we affirm the decision if from the evidence it would be reasonable to find facts to support it." (Emphasis added.)

The "decision" of the lower court was that the transcript was not prepared in anticipation of litigation. This court heretofore has invoked the rule that:

"Even though the trial court entered its judgment upon an erroneous basis, still, if such judgment is properly supported upon some other basis which is disclosed by the pleadings and evidence, we should not reverse it." *Ralph A. Badger & Co.* v. *Fidelity Building & Loan Ass'n,* 94 Utah 97, 117, 75 P. 2d 669, 678.

But this can be done only if the findings of fact that are made support another legal theory as well as the conclusions of law on which the trial court bottomed its judgment.

I have set out above the trial court's remarks to the effect that the motion was granted because the transcript was not obtained in anticipation of litigation. These remarks indicate the reason why the motion was granted. It is also the only part of the record which may be construed as findings of fact.

Under this state of the record, this court cannot assume that the trier of facts found that denial of production would cause undue hardship or injustice. The trial court did not consider that question. It never even reached it. It found that the transcript was not prepared in anticipation of litigation. Because of the very wording of the rule itself, it was unnecessary to proceed to determine whether any hardship or injustice might exist if discovery were not allowed. By implication that question was excluded. The question of anticipation of litigation and whether denial of the transcript would cause undue hardship or injustice are entirely different. Logically, the lower court would first determine whether the hearing of which a transcript was demanded was in anticipation of litigation; if that was found in the negative as in this case there would be no need of determining the question of hardship. The motion could be granted on either of these two grounds but the mere fact that it was granted does not by implication mean that the trial court found that, even if the transcript was not prepared in anticipation of litigation, that it would nevertheless cause undue hardship or injustice if its discovery were not allowed. As I understand the rule on appeal, we should take all conflicts in the evidence most favorable to respondent concerning whether the preparation of this transcript was made in anticipation of litigation. But we are extending the scope of this appeal beyond proper limits when we state what the facts of the case are concerning an additional ground for granting this motion, which was not considered, nor ruled upon, nor impliedly contained in the order of the trial court.

The general rule is stated in Volume 5, C. J. S., page 418, as follows:

"Implied Findings

"In support of a judgment, findings of the material facts essential to sustain it may be implied where sufficient evidence is present in the record and the implication is not inconsistent with, or in contradiction of, the record."

"Limitations of rule. A finding will not be implied where it would be clearly wrong to do so, as where it would be in contradiction of the record, or where the likelihood exists that to do so would thwart the intention of the trial court, or where the counsel have agreed that there shall be no findings, or where the court has expressly refused to find the particular fact. Further, the doctrine of implied findings will not be applied as to matters upon which the court has made a direct finding, *or a finding which precludes the inference,* or where the fact is not fairly inferable from the facts found.

"It will not be presumed that the trial court found a particular fact where to do so would result in a reversal of the judgment, *or where the record shows that the judgment was expressly based on the findings made, or where the finding presumed would be inconsistent with the findings made;* where a special statute applicable to the case required certain facts to be set forth in the judgment; where the case is one in which no findings are required; or where the findings made are not within the pleadings." (Emphasis added.)

The record with which we are here concerned shows that the order of the court was based on the findings made; that the transcript was not prepared in anticipation of litigation. Nothing was determined about any resulting hardship or prejudice if discovery were not permitted. The trial court's ruling does not contain any such implied factual basis.

The Supreme Court of the United States in the case of *Kelley* v. *Everglades Drainage District,* 319 U. S. 415, 63 S. Ct. 1141, 1144, 87 L. Ed. 1485, had before it a record which did not contain sufficient findings to show the fairness of a plan for the composition of the debts of the bankrupt. The court stated:

"To support such determination [of fairness in the plan of allotment to each class of creditors], there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which the ultimate conclusion of fairness can rationally be predicated.

"The findings in the present case fall short of that requirement.

\* \* \* \* \*

"It may be that adequate evidence as to these matters is in the present record. On that we do not pass, for it is not the function of this court to search the record and analyze the evidence in order to supply findings which the trial court failed to make. Nor do we intimate that findings must be made on all of the enumerated matters or need be made on no others; the nature of the evidentiary findings sufficient and appropriate to support the court's decision as to fairness or unfairness is for the trial court to determine in the first instance in the light of the circumstances of the particular case. We hold only that there must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion.

"Since the state of the record is such that a proper determination of the questions of law raised by petitioners' contentions as to the treatment of class II creditors cannot be made in the absence of suitable findings, *the petition for writ of certiorari is granted, the judgment is vacated, and the cause remanded* to the District Court for appropriate action in conformity with this opinion." (Emphasis added.)

It will be noted that in this case the Supreme Court of the United States did not permit the judgment to stand without adequate findings of fact to support it.

In *Jones* v. *Industrial Commission,* 90 Utah 121, 61 P. 2d 10, this court held that though the commission is not required to make written findings of fact, the case would be remanded to the commission where it was impossible to dispose of the case on its merits until the ambiguous finding involved had been clarified. And in *Salt Lake City* v. *Industrial Commission,* 103 Utah 581, 137 P. 2d 364, 367, we stated that this court

"cannot assume that the Commission, if it had made a finding on this issue, would have resolved the conflict in favor of the [successful] applicant."

In the case of *Farrell* v. *Cameron,* 98 Utah 68, 94 P. 2d 1068, 1069, the plaintiff recovered a judgment in the trial court, sitting without a jury, for injuries sustained in an automobile collision. The opinion of this court states:

"The court failed to find on which side of the road the defendant's car was at the time of the collision. We cannot assume facts against the defendant, and so we will assume that all of his car was on the right side of the center line of the road."

To follow the principle embraced in this language would mean that no prejudice or hardship is shown in the present record.

In *Thomas* v. *Farrell,* 82 Utah 535, 26 P. 2d 328, the judgment was reversed and the case remanded to the district court with directions to grant a new trial in order to make findings on all the facts necessary to sustain a judgment.

This opinion arises out of the first case in this jurisdiction construing a new rule of discovery. The limitation of Rule 30(b) was not included in the Federal Rules. The issue as to what facts may be assumed to be true, when an appeal is taken to this court and no findings of fact appear in the record, is neither technical, captious nor trivial. It is highly important for this court in the application of this rule to know what the lower court found to be circumstances of hardship. Discovery of a document prepared by an adverse party in anticipation of litigation is a very important and fundamental procedural device. The limitation which was intended to protect the parties to a lawsuit should not be swept aside by the assumption of facts in this court which were not found to exist and are not inferentially contained in the order of the trial court.

Therefore I believe the opinions of this court should either be limited to the issue of anticipation of litigation or it should be remanded to the trial court to make findings of fact upon the matter of undue hardship and prejudice, and to take additional testimony if so advised.

HENRIOD, Justice, did not participate.